# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

—————————————————— :

**KELI KOLEGRAFF, MD, PHD** :
**Lincoln, NE 68508** :
  :
  :
        **Plaintiff,** :
  :    **CIVIL ACTION NO.**
   **v.** :
  :
**GEISINGER HEALTH SYSTEM** :    **JURY TRIAL DEMANDED**
**100 North Academy Avenue** :
**Danville, PA 17822** :
  :
    **and** :
  :
**GEISINGER SURGERY INSTITUTE** :
**100 North Academy Avenue** :
**Danville, PA 17822** :
  :
    **and** :
  :
**GEISINGER CLINIC** :
**100 North Academy Avenue** :
**Danville, PA 17822** :
  :
    **and** :
  :
**GEISINGER HEALTH SYSTEM** :
**FOUNDATION** :
**100 North Academy Avenue** :
**Danville, PA 17822** :
  :
    **and** :
  :
**GEISINGER MEDICAL CENTER** :
**100 North Academy Avenue** :
**Danville, PA 17822** :
  :
       **Defendants.** :
—————————————————— :

## COMPLAINT

## I.  INTRODUCTION

Plaintiff, Keli Kolegraff, MD, PhD, brings this employment discrimination, retaliation, and hostile work environment action against her former employers, Geisinger Health System, Geisinger Surgery Institute, Geisinger Clinic, Geisinger Health System Foundation, and Geisinger Medical Center (collectively, "Geisinger" or "Defendants").  A female plastic surgeon, Plaintiff worked within a male-dominated medical department where she was consistently undermined, belittled, and treated differently than her male colleagues.  After being subjected to a hostile work environment and complaining that she was being discriminated against for being female, Plaintiff was terminated by Defendants and blocked from future employment within its health system.

Plaintiff was discriminated against because of her sex, subjected to a hostile work environment, and retaliated against for complaining about the same in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory, and punitive damages, and all other relief under applicable federal and state law as this Court deems appropriate.

## II.  PARTIES

1.      Plaintiff, Keli Kolegraff, MD, PhD is a female individual who currently resides in Nebraska.

2.      Geisinger is a regional healthcare provider based in Danville, Pennsylvania.

3.      Geisinger is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania.

4.      At all times material hereto, Geisinger employed more than fifteen (15) individuals.

5.      At all times material hereto, Defendants have had integrated operations, have had

shared ownership, have had common management, and have had centralized control over their employment matters.

6.      At all times material hereto, Defendants have acted as a single employer, joint employers, and/or alter egos.  The operations of Defendants are substantively consolidated.

7.      At all times material hereto, Geisinger has acted as an "employer" within the meaning of the statutes which form the basis of this matter.

8.      At all times material hereto, Plaintiff was an "employee" of Geisinger within the meaning of the statutes which form the basis of this matter.

9.      At all times material hereto, Geisinger acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Geisinger and in furtherance of Geisinger's businesses.

### III.      JURISDICTION AND VENUE

10.      The causes of action which form the basis of this matter arise under Title VII and the PHRA.

11.      The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

12.      The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

13.      Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

14.      On or about April 20, 2021, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), and dual-filed with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination and retaliation alleged herein.

Attached hereto, incorporated herein and marked as Exhibit 1 is a true and correct copy of the PHRC/EEOC Complaint.

15.     On or about April 19, 2022, Plaintiff filed a Second Complaint with the PHRC, and dual-filed with the EEOC, complaining of additional acts of discrimination and retaliation alleged herein.  Attached hereto, incorporated herein and marked as Exhibit 2 is a true and correct copy of the Second PHRC/EEOC Complaint.

16.     On or about May 9, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue. Attached hereto, incorporated herein and marked as Exhibit 3 is a true and correct copy of that notice.

17.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### IV.     FACTUAL ALLEGATIONS

18.     Plaintiff was hired by Defendants on or about April 24, 2020, and she began her employment with Defendants on September 1, 2020.

19.     Plaintiff consistently performed her job duties in a highly competent manner.

20.     Plaintiff last held the position of Associate Plastic Surgeon in the Department of Plastic and Reconstructive Surgery at Defendants' Danville, PA location.

21.     Plaintiff was qualified to perform the Associate Plastic Surgeon position.

22.     Plaintiff last reported to Christian Kauffman (male), Chair, Plastic Surgery.

23.     Kauffman reported to Mohsen Shabahang (male), Chair, Geisinger Surgery Institute.

24.     Shabahang reported to Alfred Casale (male), Chief Medical Officer, Surgical Services.

4

25.     At all relevant times, Plaintiff was the only female doctor directly reporting to Kauffman at the Danville, PA location.

26.     On September 1, 2020, Cheryl Martin (female), Associate Vice President of the Surgical Institute, told Plaintiff that Defendants were excited to finally have a female plastic surgeon join the practice. Martin stated that patients had been asking for a female plastic surgeon, and that there was already a waiting list to see Plaintiff.

27.     Plaintiff was also told by Rosemary Leeming (female), Chief Medical Officer, and Nicole Sharp (female), Breast Surgeon, that they were excited that Plaintiff was hired because many patients had requested a female plastic surgeon.

28.     Many female patients likewise told Plaintiff that they were happy to have a female surgeon because Plaintiff could better relate to what they were going through.

29.     Plaintiff regularly received positive emails and reviews from patients, thanking her for her care.

30.     Plaintiff was commended for taking exceptional care of her patients.

31.     Throughout her employment with Defendants, Plaintiff received excellent scores in patient ratings and reviews – higher than the scores her male colleagues had received.

32.     Defendants treated female employees, including Plaintiff, differently and worse, and in a more hostile, dismissive, and demeaning manner, than they treated male employees.

33.     Defendants belittled Plaintiff, ignored her, and indicated that her contributions did not matter.

34.     For example, Kauffman falsely accused Plaintiff of "stealing" female breast reconstruction patients before Plaintiff even started seeing patients of Defendants.

35.     Kauffman also falsely accused Sharp (female) of being manipulative and trying to

get Plaintiff to be her go-to plastic surgeon.

36.     Kauffman instructed Plaintiff to stop interacting with Sharp.

37.     Unlike male employees' new provider announcement flyers, which featured only them, Plaintiff's new provider announcement flyer included Plaintiff along with her male colleagues.

38.     Numerous employees told Plaintiff that they thought she was being treated in a sex discriminatory way and different from male employees.

39.     Multiple female physicians indicated that they believed Plaintiff was being targeted by the male employees in the plastic surgery department and Defendants' "boys' club."

40.     Lisa Jacob (female), Associate Plastic Surgeon, told Plaintiff that Defendants were a "boys' club" and that the men stick together.

41.     Former employees told Plaintiff that they recognized a pattern and believed that Plaintiff was being targeted because she is a woman.

42.     Male supervisors and employees, including Kauffman, Shabahang, Sean Devitt (male), Associate Plastic Surgeon, and Joseph DeSantis (male), Associate Plastic Surgeon, were condescending, confrontational, demeaning, and harsh to female employees, including Plaintiff.

43.     Kauffman used Plaintiff's ideas and research without attributing them to her.

44.     At department meetings, male employees spoke up, contributed readily, and were encouraged to do so; however, when a female employee spoke up or shared an idea, she would be dismissed or discredited.

45.     Plaintiff was excluded from meetings and communications related to her job duties.

46.     Plaintiff did not receive the support, training, and mentoring that male employees received.

47.     Male employees were commended for asking for advice; however, when Plaintiff asked for advice, it raised "concerns" about her ability.

48.     Plaintiff was held to a more stringent standard than male employees were held.

49.     Kauffman canceled one-on-one meetings that were scheduled with Plaintiff. Plaintiff did not observe Kauffman doing the same to male employees.

50.     Male employees were advertised and recognized by Defendants while Plaintiff was not.

51.     Plaintiff was unjustly criticized for being "too hands-on" and "caring" with patients.

52.     Plaintiff was micromanaged and watched very closely during surgical procedures, and Kauffman would routinely come into her surgeries, unannounced, and scrutinized her work. Plaintiff did not observe him doing this with male employees.

53.     While male employees consistently were assisted by physicians' assistants during surgeries, Plaintiff was told that, for several of her surgeries, no physician's assistants were available.

54.     Other physicians and surgeons told Plaintiff that her male colleagues indicated that they did not like that she was getting a lot of referrals.

55.     Plaintiff found male employees' conduct and comments to be offensive, based on sex, and contributing to the hostile work environment to which she was subjected.

56.     Plaintiff had heard that numerous female employees complained of sex discrimination and sexual harassment at Defendants, but nothing was done in response.

57.     On October 8, 2020, Kauffman unjustly criticized Plaintiff's performance. Kauffman stated that there had been some "issues" that have arisen and instructed Plaintiff to

cancel her clinics and not to call her patients.

58.     Plaintiff asked if there had been any complaints raised about her.   Kauffman responded that there had not been any complaints, but he knew there would be.

59.     At no point did Kauffman inform Plaintiff of any patient complaint raised against her.

60.     On November 6, 2020, Kauffman falsely accused Sharp of showing favoritism towards Plaintiff in her referrals for breast reconstruction surgery.

61.     On November 13, 2020, Plaintiff complained of sex discrimination to Leeming.

62.     Plaintiff complained that she was being treated differently and worse, and in a more hostile and dismissive manner, than her male colleagues.

63.     Plaintiff further stated that she was being unjustly criticized, held to a more stringent standard, and felt like she had a target on her back. Plaintiff also stated that Kauffman falsely accused her of trying to steal patients.  Plaintiff cried during the conversation.

64.     Leeming validated Plaintiff's sex discrimination concerns and gave Plaintiff additional examples of how she was being treated differently.

65.     For example, Leeming explained that when Devitt joined the practice one year earlier, Kauffman encouraged breast surgeons to call him directly with referrals, and had Devitt serve as the representative on committees, including the breast multidisciplinary committee.

66.     Leeming discouraged Plaintiff from taking her complaints to Human Resources ("HR") and said that she did not think that HR would help her.

67.     When Plaintiff told Leeming that she had an unexplained, upcoming meeting with Shabahang and Kauffman on November 24, 2020, and that Kauffman had canceled their one-on-one meeting scheduled for November 20, 2020, without explanation, Leeming stated that she did

not have a good feeling about this.

68.     Leeming stated that Shabahang could not be trusted and that she did not trust him.

69.     Leeming stated that she would look into Plaintiff's concerns and would get back to her.

70.     On November 21, 2020, Leeming told Plaintiff that she had spoken with people in leadership at Defendants about Plaintiff's experiences and sex discrimination complaints, and that they were concerned about what was happening.

71.     Leeming further stated that Defendants were not supportive of women.

72.     On November 24, 2020, Kauffman, Shabahang, and Wendie Snyder (female), Operations Director, unjustly criticized Plaintiff's performance and surgical skills during a meeting, and they made false statements and misrepresentations about Plaintiff.

73.     Plaintiff was told that Defendants had "concerns" about her.  Plaintiff was unjustly criticized for asking for advice during a surgery, and falsely accused of not knowing what she was doing or having the ability to train residents.

74.     Plaintiff was told that "fit" was important for a small department like plastic surgery, and one person can disrupt the dynamic. Plaintiff was told that she was not a good fit for the department.

75.     Plaintiff rebutted the criticisms and false statements about her performance.

76.     Kauffman stated numerous times that his concerns were significant, and he did not think that Plaintiff would be able to improve. Shabahang stated that this seemed like a misunderstanding, and that now everyone should try to move forward.

77.     On November 25, 2020, Plaintiff stated to DeSantis that she did not understand why she was being unjustly criticized, and that it felt like Defendants were using anything they could find against her.

9

78.     DeSantis stated that he did not feel as though Plaintiff was being given a fair chance. He told Plaintiff that he would look into the situation and get back to her.

79.      On November 29, 2020, Plaintiff complained of sex discrimination in a phone call with Gerald Maloney (male), Chief Medical Officer.

80.     Plaintiff complained that she was being treated differently and worse than her male colleagues. Plaintiff told him that she was being asked not to call her patients, asked to cancel her clinics, falsely accused of stealing patients, and that, overall, she was not being respected in the department.

81.     Plaintiff further stated that she felt she was being targeted and set up to fail.

82.     Maloney expressed concern and commented that Defendants had a problem with things like this in the past.

83.     Maloney told Plaintiff to rely on Leeming as an advocate and ally.

84.     On December 3, 2020, Kauffman, Snyder, Devitt, and DeSantis unjustly criticized Plaintiff's performance in a meeting, made false statements and misrepresentations, again expressed "concerns" about Plaintiff, and belittled Plaintiff.

85.     Kauffman told Plaintiff at the beginning of the meeting that he did not want Plaintiff to respond to anything they were telling her. They refused to allow Plaintiff to rebut their criticisms, false statements, misrepresentations, or "concerns" about her.

86.     Devitt falsely accused Plaintiff of misrepresenting herself during her interviews for the position and falsely accused Plaintiff of not knowing what she was doing in surgical procedures or being capable of teaching residents.

87.     Plaintiff did not misrepresent her skills and abilities in her interviews, and she had won a national teaching award that year for her contributions to resident teaching and education.

88.     Kauffman repeatedly tried to stop Plaintiff from defending herself and indicated that

she was being annoying.

89.     On December 5, 2020, Plaintiff complained of sex discrimination to DeSantis. Plaintiff complained that she felt she was being targeted as a woman in the department and that she was not being given a fair chance to succeed.

90.     DeSantis indicated that she deserved to be treated this way and that she should do what her boss tells her to do without asking questions. DeSantis asked Plaintiff if she really wanted to weather out this storm, considering that the situation was so bad, and asked her at what point she would decide that it was not worth it and move on.

91.     Plaintiff responded that she loved her job and her work, and wanted Defendants to realize that she had value, complimentary interests, and skills to contribute.

92.     On December 6, 2020, Plaintiff complained of sex discrimination to Akpene Gbegnon (female), General Surgeon and former employee of Geisinger. Plaintiff told her what she was experiencing and that she was concerned about an upcoming meeting with Shabahang.

93.     Gbegnon was immediately concerned and told Plaintiff that she would send an email to high-level employees who could help Plaintiff.

94.      On December 6, 2020, Gbegnon sent an email to Brion Lieberman (male), Vice President Human Resources, Jaewon Ryu (male), President and Chief Executive Officer, Edward Hartle (male), Vice President and Chief Medical Officer, Arthur Breese (male), Director of Diversity and Inclusion, and Melissa Bowditch (female), HR Representative, that included the following:

> I just learned that another female surgeon is currently experiencing an even worse situation than mine within the department of surgery. Can the leadership please stop this? How many women have to suffer abuse and retaliation before something is done?

95.     On December 6, 2020, Lieberman responded to Gbegnon, asking the name of the individual referenced in the above email. On December 6, 2020, Gbegnon responded to Lieberman, copying Ryu, Hartle, Breese, and Bowditch, providing Plaintiff's contact information and stating the

following:

> Her name is Dr. Keli Kolegraff. She is a newly hired plastic surgeon in the department. . . . She is concerned about a meeting she has with Dr. Shabahang tomorrow morning at 9am, and has already shared with me her horrible experiences within the department. I just called her to get her permission to share her information. She would love it if she could talk to someone either tonight or tomorrow morning, preferably before her meeting with Dr. Shabahang.

96.     On December 6, 2020, following the above, Lieberman emailed Plaintiff, copying Breese and Allison McClafferty (female), HR Representative, stating the following:

> Your contact information was provided to me by Dr Gbegnon. She shared you were concerned about the experience you are having at Geisinger and a meeting you have tomorrow with Dr Shabahang at 9am. I've asked my colleague Allison McClafferty to reach out to you tomorrow morning, before 9a. She will be in touch, please let Allison know the best number to call. I've also copied my other colleague, Arthur, as he was on the same email from Dr Gbegnon asking for outreach to you so I wanted to keep him included and aware.

97.     On December 7, 2020, in a virtual meeting with McClafferty, Plaintiff complained of sex discrimination. Plaintiff detailed how she was being treated by male supervisors and colleagues, and complained that she felt she was being unjustly criticized, held to more stringent standards, not given support, targeted, and set up to fail because she is a woman. Plaintiff stated that she was concerned about her upcoming meeting with Shabahang, based on other meetings she had recently.

98.     On December 7, 2020, following the above meeting, in a meeting with Shabahang and Erin Pica (female), Vice President, Surgery Institute, Shabahang spoke to Plaintiff in a condescending manner, and told her he knew that Plaintiff had meetings recently with Kauffman and her male colleagues.

99.     Plaintiff again rebutted the unjust criticisms, accusations, false statements, and misrepresentations against her. Shabahang asked Plaintiff if she had yet grasped the reason why she ended up down this road. He stated that the plastic surgery department was a very small department and the dynamic and interaction among the group was very important.

100.    Plaintiff understood that he was trying to intimidate her and stop her from speaking up for herself and complaining of sex discrimination.

101.    On December 9, 2020, Plaintiff continued her conversation with McClafferty from December 7, 2020. Plaintiff provided additional examples of how she was being treated in a hostile and dismissive manner because she is female.

102.    McClafferty acknowledged that Plaintiff's work environment was hostile.

103.    On December 13, 2020, Casale told Plaintiff that Shabahang and Kauffman had taken their concerns about Plaintiff to him, and he wanted to know from Plaintiff what was going on.

104.    Plaintiff complained to Casale that she felt like she was being targeted because she is a woman. Plaintiff explained that she knew how to do the surgical procedures that she was being unjustly criticized for, and that she thought she was supposed to be learning from Kauffman and being mentored and supported by Shabahang. Plaintiff complained that she was being targeted and not supported because she is a woman.

105.    Casale stated that someone needed to talk with these male supervisors.

106.    On December 13, 2020, following the above call, Leeming told Plaintiff that Plaintiff's male supervisors and colleagues were out to get her, and that she was not safe.

107.    On December 17, 2020, Plaintiff complained of sex discrimination in an email to McClafferty.  Plaintiff complained:

> As I watch and experience this situation evolving, and as you are aware from the email sent by Akpene Gbegnon, it is clear that I am being treated differently than my male partners. I am being held to a different, higher standard and have different rules. I was falsely accused of stealing female breast reconstruction patients before I even started seeing patients. I am told that I am 'too hands on' and caring with patients. My professional opinions and expertise are ignored and/or outright belittled. My male partners meet and discuss department matters without me present. They make disparaging remarks about other female surgeons. It is fine with me if you share my experience and sex discrimination concerns with Dr. Casale. I would like to find a resolution to this situation so that I can continue to focus on my work

13

and patients here at Geisinger.

108.    On December 20, 2020, Plaintiff provided McClafferty with documentation supporting her sex discrimination complaints.

109.    On December 22, 2020, McClafferty emailed Plaintiff, stating:

> [B]ased on the concerns of sex discrimination you've raised in your email to me on the evening of December 17th, I am obliged to formally take action and investigate. Geisinger takes allegations of discrimination very seriously and must thoroughly review these allegations. I will be speaking with Dr. Casale, however, conversations with other members of the Surgery Institute/Plastic Surgery department will need to occur as part of this process. Please be aware that Geisinger does not tolerate retaliation.

110.    On December 24, 2020, in a conversation with McClafferty, Plaintiff understood, based on her tone, that she was annoyed with Plaintiff and her sex discrimination complaints. She told Plaintiff that she would begin an investigation into Plaintiff's sex discrimination complaints after the holidays, on January 4, 2021.

111.    On December 31, 2020, McClafferty emailed Plaintiff, stating that she would be meeting with Shabahang and Pica on January 4, 2021, to make them aware of Plaintiff's sex discrimination complaints.

112.    On January 5, 2021, McClafferty informed Plaintiff that Shabahang, Kauffman, and Pica were made aware of Plaintiff's sex discrimination complaints on January 4, 2021.

113.    On January 11, 2021, Leeming told Plaintiff that what Plaintiff's male supervisors and colleagues were doing to her was evil, and that she did not understand what they had against Plaintiff but that they wanted Plaintiff out.

114.    On January 19, 2021, McClafferty told Plaintiff that Defendants had concluded their investigation and found no evidence to substantiate Plaintiff's sex discrimination complaints. She stated that she could understand why the male individuals were frustrated with Plaintiff because she refused to do things that they asked her to do.

115.    When Plaintiff asked what she meant by this statement, McClafferty had no examples or further information, and would not elaborate.

116.    Plaintiff told McClafferty that this was not true. Plaintiff stated that she was doing what they were asking her to do but that the rules kept changing and they kept spinning things against her.

117.    McClafferty told Plaintiff that she needed to give them the benefit of the doubt, assume positive intent, and assume that they were acting in Plaintiff's best interests.

118.    Plaintiff requested a written report of her investigation findings. She refused to provide the same and stated that she would follow up with an email to outline a summary of her conclusions.

119.    Defendants failed to remedy or prevent the sex discrimination to which Plaintiff was subjected.

120.    On January 21, 2021, McClafferty emailed Plaintiff, stating that Plaintiff's "concerns of gender discrimination within the Plastic Surgery Department were not able to be substantiated," and that the "matter" was "considered closed at this time."

121.    After she complained of sex discrimination, Plaintiff was treated in an increasingly hostile and dismissive manner, and differently and worse than before she had complained of sex discrimination and differently and worse than male and/or noncomplaining employees.

122.    Kauffman cancelled scheduled meetings with Plaintiff without explanation.

123.    Plaintiff was excluded from meetings and communications that she had been part of before she complained of sex discrimination.

124.    When Plaintiff asked why she had not been part of a meeting to which her noncomplaining male colleagues were invited, Kauffman stated that it was a "committee meeting."

125.    Plaintiff received no explanation as to why she was not part of the committee and her noncomplaining male colleagues were.

126.    Defendants canceled surgeries that she had scheduled with patients.

127.    Defendants held Plaintiff to a more stringent standard than her noncomplaining male colleagues.

128.    Defendants assigned Plaintiff less operating room time than her noncomplaining male colleagues were assigned.

129.    Plaintiff no longer received breast reconstruction referrals and had significantly fewer new patient consultations than her noncomplaining male colleagues had been assigned.

130.    Plaintiff was ignored and excluded from routine patient care duties.

131.    On January 27, 2021, Kauffman emailed Plaintiff, stating that he would place Plaintiff on a Performance Improvement Plan if she did not complete certain tasks within the next two days, which was two days sooner than Plaintiff was originally told the assignments were due.

132.    Plaintiff followed up with Kauffman later that day to let him know that she had completed the assignments.

133.    On February 3, 2021, Casale unjustly criticized Plaintiff for getting everyone in the plastic surgery department to be upset with her.

134.    Plaintiff responded that she felt like she had no support and that she was being targeted because she is a woman.

135.    Casale stated that McClafferty concluded that there was no sex discrimination. Casale seemed disappointed when Plaintiff expressed that she enjoyed the work that she did and wanted to move forward and be able to focus on her work and her patients.

136.    Plaintiff understood Casale to indicate that she should resign from Defendants.

137.    On February 5, 2021, in a meeting with Shabahang, Kauffman, Snyder, and McClafferty, Defendants instructed Plaintiff to resign.

138.    Shabahang stated that, as Plaintiff was aware, McClafferty recently concluded her investigation of Plaintiff's sex discrimination complaints and that she found no evidence that Plaintiff

was being treated differently.

139.    Shabahang told Plaintiff that she would resign if she knew what was good for her, and Kauffman agreed.

140.    Shabahang and Kauffman told Plaintiff that her microsurgical skill level did not match what Defendants were looking for in her position, and that Plaintiff was not a good match for the department. This is a false criticism levied against Plaintiff because she is female and/or because she complained of sex discrimination.

141.    When Plaintiff asked if she could do more microsurgeries, as it was unfortunate that Kauffman had the impression that her skills were not what they should be, Shabahang and Kauffman told Plaintiff that she would not be given the opportunity to improve her microsurgical skills.

142.    When Plaintiff asked whether there was another position to which she could transfer, she was told that she was not qualified for any open positions at Defendants, which was false, and that Plaintiff had no future at Defendants.

143.    Plaintiff complained that she was being discriminated against because of her sex and retaliated against because of her sex discrimination complaints. They did not deny the same. They told Plaintiff that, if she resigned, they would write letters of recommendation for her.

144.    After the above meeting, Plaintiff was removed from the plastic surgery residency program faculty roster. By removing Plaintiff from the roster, even though she remained faculty in the residency program, she had no opportunity to complete the American College of Graduate Medical Education survey on workplace harassment and gender discrimination.

145.    In or about February 2021, Martin (female) resigned from Defendants.

146.    Before Plaintiff had complained of sex discrimination, Plaintiff had no indication that her job was in jeopardy.

147.    On February 7, 2021, in an email to Shabahang, Kauffman, Lieberman, Snyder, and

McClafferty, and forwarded to Casale, Plaintiff stated that she was not resigning, and complained of sex discrimination again. Plaintiff wrote: "The fact that you are unwilling to mentor and support a female surgeon in her transition from residency to junior faculty is further evidence of the rampant gender discrimination within the Geisinger Department of Plastic Surgery and the Surgical Institute."

148.    On February 8, 2021, Shabahang acknowledged receipt of Plaintiff's February 7, 2021, email, and stated that he had scheduled a mandatory meeting for the next day to discuss further.

149.    On February 9, 2021, in a meeting with Shabahang, Kauffman, Snyder, and McClafferty, Defendants again instructed Plaintiff to resign. They told Plaintiff that, if she did not resign, her patient safety record could be called into question, which could result in some of Plaintiff's hospital privileges being revoked and a medical board investigation into Plaintiff.

150.    They told Plaintiff that her February 7, 2021, email, in which she complained of sex discrimination, was offensive and slander against Defendants.

151.    Plaintiff was also told that she needed to be careful about what she said.

152.    They also told Plaintiff that if she did not resign, her employment would be terminated effective March 12, 2021.

153.    Shabahang told Plaintiff that the March 12, 2021, termination date was meant to jeopardize her ability to sit for the board exams on May 11, 2021, as Plaintiff needed to be employed with active hospital privileges in order to take the board exams.

154.    Shabahang told Plaintiff that, if she resigned, she would be paid through May 31, 2021, which would not jeopardize her ability to take the board exams.

155.    On February 11, 2021, Lieberman told Plaintiff that, if she did not resign, Defendants may open a patient safety investigation into her, which could result in some of Plaintiff's hospital privileges being revoked.

156.    Lieberman stated that, if Plaintiff's hospital privileges were revoked, Plaintiff would

have to disclose the same on future job applications. He stated that Defendants had concerns about Plaintiff's ability and that she would not be given the opportunity to improve her skills that were in question. Plaintiff responded that she had done nothing wrong regarding patient safety, and nothing to warrant an investigation into her conduct.

157.    Defendants threatened Plaintiff in attempt to have her resign.

158.    Several of Plaintiff's patients indicated to her that they felt she was being pushed out of the department by her male supervisors and colleagues, and that it was "sexism"—especially after they received a letter from Defendants on or about February 12, 2021, stating that Plaintiff was no longer seeing patients at Geisinger and that her patients would be in good hands with Kauffman (male), DeSantis (male), or Devitt (male).

159.    On February 13, 2021, Leeming told Plaintiff to go easy on the guys—that they were just little men in a small town, and they really did not know what they were doing. She stated that there were deep problems at Geisinger.

160.    On February 15, 2021, Kauffman emailed Plaintiff stating that she would have no new clinic patients starting on February 15, 2021, and no operating room time starting on March 1, 2021, and that her last day of employment would be March 12, 2021.

161.    On February 24, 2021, Kauffman emailed Plaintiff the following:

> I wanted to clarify with you the plan starting on March 1st. The 2 weeks in March are to allow to see as many follow-up patients as you would like. Starting March 1st, you will not be doing any more OR cases (at GMC or Woodbine) or clinic procedures. I'm sorry that I didn't clarify clinic procedures earlier, but the expectation is no procedures starting March 1st. I also need you to stop communicating directly with patients via phone or email. Communication should go through Nicole or Amy. Patients are getting confused when they are hearing from you and then hearing from us. All patients plans should be communicated with Nicole, Amy, Steph, Wendie, or myself, and we will then communicate with the patient.

162.     When Plaintiff responded by asking why he had her listed on the call schedule for the last weekend of February if she was not allowed to operate or perform procedures, Kauffman stated, in a follow-up email: "I was planning on transferring any consults to someone else. That being said, I will be taking call this weekend to avoid any issues."

163.     On March 1, 2021, in an email to Shabahang, Kauffman, Lieberman, McClafferty, and Snyder, Plaintiff again complained of sex discrimination and retaliation. Plaintiff stated the following:

> In meetings with Drs. Shabahang and Kauffman, Wendie, and Allison on 2/5 and 2/9, I have been told numerous times to resign. I was told that I would be given letters of reference. I was accused of "slandering" Geisinger when I complained of sex discrimination. I was told that if I did not resign, I would be terminated as of 3/12. As described by Drs. Shabahang and Kauffman, Wendie, and Allison on 2/5 and 2/9 and further elaborated on by Brion on 2/11, if I don't resign, there would be the potential for significant damage to my future and my career. Specifically, in the meeting with Brion on 2/11, I was told that I was not safe with patients, that I was not capable of doing certain procedures, that I could have privileges revoked, and that Geisinger would open a patient safety investigation into me if I did not resign. I have done nothing to warrant a patient safety investigation into my procedures or performance, and no concerns had previously been raised to me. Additionally, this is in complete contrast to the offers to provide me with letters of reference. It seems to me that the termination of my clinical practice has already occurred, as you have made it clear that I am no longer allowed to see new patients, operate, perform procedures, or communicate directly with my patients via phone or email as of today. . . . .
>
> With these considerations in mind, I will emphasize again that I am not going to resign under any circumstance. I have no reason to resign. I strongly disagree that there is any reason for concern regarding my microsurgical skills or safety with patients. Furthermore, I have never seen any documentation of any complaint or concern about me.
>
> It was only after I complained in writing of sex discrimination that I was told to resign or be terminated. I believe that I am being discriminated against because I am a woman and retaliated against for complaining of sex discrimination at Geisinger.

164.     On March 5, 2021, Lieberman emailed Plaintiff and acknowledged that Plaintiff "alleg[ed] sex based disparate treatment on or about December 17, 2020," and did not deny that

Plaintiff was being terminated because of her sex or because of her sex discrimination complaints.

165.    On March 7, 2021, in an email to Lieberman, copying Shabahang, Kauffman, Snyder, and McClafferty, Plaintiff stated the following:

> I find it telling that you have chosen to suddenly terminate my employment, disrupting the care of hundreds of my patients, including at least fifty of whom were scheduled to have surgery with me in the coming months, jeopardizing my career and future, rather than simply let me finish out my term with Geisinger. This has nothing to do with the department's need for a microsurgeon. This is retaliation against me in response to my complaint about gender discrimination at this institution.

166.    Plaintiff received no response to this email.

167.    On March 10, 2021, Kauffman aggressively knocked on Plaintiff's office door and told her in a loud voice that he needed to speak with her now. When Plaintiff opened the door, she saw that Kauffman was accompanied by security guards and a large German Shepherd dog.

168.    Plaintiff was taken into a meeting with Kauffman, Shabahang, McClafferty, and Snyder. Kauffman stated that a patient had come forward with a complaint against Plaintiff, stating that she had requested their medical records, and that this situation had been reviewed with the privacy office. Kauffman stated that, since this was against hospital policy, Plaintiff's employment with Geisinger was terminated, effective immediately.

169.    When Plaintiff asked for the name of the patient, the nature of the complaint, and further details, Kauffman refused to give any further information. When Plaintiff stated that requesting patients' medical records was not a policy violation, that it was common and accepted for surgeons to do the same, that she had obtained consent from patients to obtain their medical records, and that, although she had received patients' consent, she had not obtained any patients' records, no one responded.

170.    Kauffman handed Plaintiff a letter, signed by Kauffman, stating that her employment was terminated "based on [her] current microsurgical skills."

171.     Plaintiff was then instructed to leave the building and that her personal belongings would be shipped to her.  Plaintiff was escorted out of the building by the security guards and dog.

172.     Defendants terminated Plaintiff's employment because of her sex and/or her complaints of sex discrimination.

173.     On March 12, 2021, McClafferty sent an email stating that Plaintiff was "relieved of employment responsibilities" on March 10, 2021, but that her "employment termination date would be March 12, 2021."

174.     Plaintiff was the only employee reporting to Kauffman who was terminated effective March 12, 2021.

175.     Plaintiff had no documented disciplinary or performance issues.

176.     Prior to Plaintiff's termination, Defendants terminated and/or pushed out the following female employees, among others: a) Akpene Gbegnon (female), General Surgeon; b) Christine Du (female), Transplant Surgeon; and c) Eileen Studders (female), Dentist.

177.     On March 23, 2022, Plaintiff applied for the posted Plastic Surgeon position at Geisinger.

178.     Plaintiff was qualified for this position, as she held this position at Geisinger before she was terminated.

179.     On April 4, 2022, Plaintiff learned from Sarah Lipka, Senior Provider Recruiter, that she was not eligible for the position for rehire "per our records."

180.     On April 6, 2022, in an email to Lipka, Plaintiff stated the following:

> Thank you for your reply. To be honest, I am quite perplexed by your response. This is the first time I am hearing that I am ineligible for rehire at Geisinger. This was never told to me. In fact, I was offered a severance agreement upon my termination. Please explain to me why I am ineligible for rehire, who made the decision, and when the decision was made. Please provide this answer to me, in writing, within 10 days. As you know, I have brought a claim of sex discrimination and retaliation against Geisinger under state and federal law, and these laws

prohibit any form of retaliation. If I do not hear a response within 10 days, I will take that as an admission of a violation of state and federal law.

181.    Plaintiff did not receive a response to this email.

182.    Plaintiff offered no explanation, including the criteria, as to why she was not eligible for rehire.

183.    Defendants' stated reasons for terminating Plaintiff's employment, and failing to hire Plaintiff, are a pretext for sex discrimination and/or retaliation.

184.    Defendants failed to take any remedial or preventative action following Plaintiff's complaints of sex discrimination and retaliation.

185.    Defendants' comments and conduct evidence a bias against female employees and employees who engage in protected activity.

186.    Respondents have an underrepresentation of female employees, especially in high level positions.

187.    Plaintiff's sex was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, in the creation of the hostile work environment to which Plaintiff was subjected, in the termination of Plaintiff's employment, and in the failure to rehire Plaintiff.

188.    Plaintiff's complaining of discrimination and a hostile work environment was a motivating and/or determinative factor in Defendants' discriminatory and retaliatory treatment of Plaintiff, in the creation of the hostile work environment to which Plaintiff was subjected, in the termination of Plaintiff's employment, and in the failure to rehire Plaintiff.

189.    Geisinger failed to prevent or address the harassing, discriminatory, and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of harassing, discriminatory, and retaliatory conduct.

190.     The retaliation against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

191.     The conduct of Defendants, as set forth above, was severe or pervasive enough to make a reasonable person believe that the conditions of employment are altered and the working environment is hostile or abusive.

192.     As a direct and proximate result of the conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

193.     The conduct of Defendants, as set forth above, was outrageous under the circumstances, was done by and with the knowledge of upper management and warrants the imposition of punitive damages against Defendants.

## COUNT I (TITLE VII)

194.     Plaintiff incorporates herein by reference paragraphs 1 through 193 above, as if set forth herein in their entirety.

195.     By committing the foregoing acts of retaliation and discrimination against Plaintiff on the basis of Plaintiff's sex, Defendants have violated Title VII.

196.     Said violations were willful and intentional and warrant the imposition of punitive damages.

197.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein.

198.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until

this Court grants the relief requested herein.

199.   No previous application has been made for the relief requested herein.

## COUNT II (PHRA)

200.   Plaintiff incorporates herein by reference paragraphs 1 through 199 above, as if set forth herein in their entirety.

201.   Defendants, by committing the foregoing acts of discrimination and retaliation, have violated the PHRA.

202.   As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein.

203.   Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

204.   No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Keli Kolegraff, MD, PhD, and against Defendants. Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)   declaring the acts and practices complained of herein to be in violation of Title VII;

(b)   declaring the acts and practices complained of herein to be in violation of the PHRA;

(e)   enjoining and permanently restraining the violations alleged herein;

(f)   entering judgment against Defendants in favor of Plaintiff in an amount to be

determined;

(g)     awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits and earnings capacity which Plaintiff has suffered and will continue to suffer as a result of Defendants' discriminatory and retaliatory misconduct;

(h)     awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures and pain and suffering, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(j)     awarding punitive damages to Plaintiff under Title VII;

(m)     awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA;

(n)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(o)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


                                                    **CONSOLE MATTIACCI LAW, LLC**


Dated: July 27, 2023                    By:     /s/ Stephen G. Console_____
                                                Stephen G. Console
                                                Rahul Munshi
                                                1525 Locust Street, 9th Floor
                                                Philadelphia, PA 19102
                                                console@consolelaw.com
                                                munshi@consolelaw.com
                                                215-545-7676
                                                Attorneys for Plaintiff,
                                                Keli Kolegraff, MD, PhD